UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IMS GLOBAL LEARNING
CONSORTIUM, INC.,
    Plaintiff,

v.                                          CIVIL ACTION NO.
                                            17-10437-GAO

SCHOOLS INTEROPERABILITY
FRAMEWORK ASSOCIATION D/B/A
ACCESS 4 LEARNING COMMUNITY,
    Defendant.

**MEMORANDUM AND ORDER RE:
DEFENDANT'S MOTION TO TRANSFER VENUE
(DOCKET ENTRY # 33)**

**February 1, 2018**

**BOWLER, U.S.M.J.**

    Pending before this court is a motion to transfer this action to the United States District Court for the Southern District of Ohio ("the Southern District of Ohio") pursuant to 28 U.S.C. § 1404(a) ("section 1404(a)") filed by defendant Schools Interoperability Framework Association d/b/a Access 4 Learning Community ("SIF"). (Docket Entry # 33). Plaintiff IMS Global Learning Consortium, Inc. ("IMS") opposes a transfer. (Docket Entry # 37). After conducting a hearing on January 11, 2018, this court took the motion (Docket Entry # 33) under advisement.

<u>BACKGROUND</u>

    This action arises out of purportedly false and misleading advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a),

by SIF, which "prepares educational data standards" for "the collection, storage, and use of educational data." (Docket Entry # 1, p. 1) (Docket Entry # 34-2). The verified complaint also includes two statutory and two common law claims under Massachusetts law. (Docket Entry # 1).

IMS, a Delaware corporation which is registered to do business in Massachusetts, also develops standards for use of educational data. (Docket Entry ## 1, 34-2). IMS and SIF "are comprised of members from school districts, government agencies, and corporations" and they "collaborate on the Common Education Data Standards," an "education data management initiative" designed "to streamline the understanding of data" across educational institutions. (Docket Entry # 1, pp. 2-4). IMS and SIF produce "standards and technology for a data transfer framework" and are direct competitors. (Docket Entry # 1, p. 4). According to its website, SIF "offers state-wide implementation of its specifications in 12 states including Massachusetts." (Docket Entry # 37-1).

In November 2016, SIF, a District of Columbia corporation with three employees, published "Educational Technical Standards 101," which the parties refer to as the "White Paper." (Docket Entry # 1, Ex. A) (Docket Entry # 1, p. 5) (Docket Entry # 34-2). IMS alleges that the White Paper, a "slide deck," and SIF's website include false statements and misrepresentations harmful

2

to IMS.  (Docket Entry # 1, pp. 5-10).  In March 2017, the Australian Ministry of Education, a longtime IMS member, refused to renew its annual contract with IMS.

SIF does not have an office in Massachusetts.  Although "[i]t has a small office in Washington, D.C., . . . its main operating presence is in Columbus, Ohio," where Larry Furth ("Furth"), the executive director of SIF, lives and works.  (Docket Entry # 34-2).  A second employee, John Lovell ("Lovell") lives and works in Bellingham, Washington, and a third employee, Penny Murray ("Murray"), lives and works in England.  (Docket Entry # 34-2).  Furth was the primary author and editor of the White Paper.  Working in Columbus, Furth collected and implemented various comments and revisions suggested by reviewers across the United States into the final document.  (Docket Entry # 34-2).  "The preparation of the Whitepaper and its posting on the Internet occurred entirely outside Massachusetts, mainly in Ohio."  (Docket Entry # 34-2).

IMS is located in Lake Mary, Florida.  Rob Abel, Ed.D. ("Abel"), the company's chief executive officer, resides in Florida and lives near Orlando.  (Docket Entry # 34-2).  The company conducts "board meetings across the country" and held one such board meeting in Massachusetts in June 2017.  Comprised of 16 employees, IMS has 19 members in Massachusetts and six members in Ohio.  (Docket Entry # 37-1).  One employee, Tracy Fandel

("Fandel"), IMS' finance and administration manager, "works out of an office in Massachusetts."[1] (Docket Entry # 37-1). Abel regularly communicates with Fandel. SIF distributed the White Paper by email in a press release on November 16, 2016. Fandel, in turn, forwarded the press release and the White Paper by email to Abel the following day. (Docket Entry # 37-1).

"[T]he direct distance between Orlando, Florida and Columbus, Ohio is 711 miles." (Docket Entry # 34-1, pp. 1-2). The direct distance between Orlando and Boston is 1,115 miles. (Docket Entry # 34-1).

DISCUSSION

Arguing that the connections of this case to Massachusetts are nonexistent, SIS moves to transfer the action to the Southern District of Ohio. (Docket Entry ## 34, 39). As a plaintiff, IMS maintains that its choice of the Massachusetts forum is afforded weight and "there is a presumption in favor of" its choice. (Docket Entry # 37).

The appropriate mechanism to transfer a case is section 1404(a) where, as here, "the chosen forum is within the federal system." Aurora Casket Co., LLC v. Caribbean Funeral Supply, Corp., CV 16-2937 (GAG/BJM), 2017 WL 5633102, at *2 (D.P.R. Nov. 22, 2017). Section 1404(a) affords this court discretion "to

---

[1] IMS did not identify Fandel as an individual likely to have discoverable information in its initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1). (Docket Entry # 34-1).

4

adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, (1988); accord Baskin-Robbins Fran. LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 41 n.7 (1st Cir. 2016) (section 1404(a) transfer motion is "addressed to the district court's sound discretion"); Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 12 (1st Cir. 2009).

The initial inquiry is "'whether the case "might have been brought" in the suggested transferee district.'" Group-A Autosports, Inc. v. Billman, CA 14-10884-JGD, 2014 WL 3500468, at *2 (D. Mass. July 9, 2014) (quoting section 1404(a)); 28 U.S.C. § 1404(a). The Southern District of Ohio is a court where this action "may have been brought" inasmuch as the majority of the alleged misconduct in preparing and posting the White Paper took place in Columbus.

In assessing a venue transfer under section 1404(a), the court considers a number of private and public interest factors. Garcia-Tatupu v. Bert Bell/Peter Rozelle NFL Player Ret. Plan, 249 F. Supp. 3d 570, 576 (D. Mass. 2017). The applicable factors "include 1) the plaintiff's choice of forum, 2) the relative convenience of the parties, 3) the convenience of the witnesses and location of documents, 4) any connection between the forum and the issues, 5) the law to be applied and 6) the state or

public interests at stake." Avci v. Brennan, 232 F. Supp. 3d 216, 219 (D. Mass. 2017); accord Kleinerman v. Luxtron Corp., 107 F. Supp. 2d 122, 125 (D. Mass. 2000). "The burden of proof rest[s] with the party seeking to transfer," i.e., SIF. Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d at 13.

Ordinarily, "there is a strong presumption in favor of plaintiff's choice of forum." Coady v. Ashcraft-Gerel, 223 F.3d 1, 11 (1st Cir. 2000). Plaintiff's choice, however, carries less weight when "'the operative facts of the case have no material connection with this district.'" U.S. ex rel. Ondis v. City of Woonsocket, Rhode Island, 480 F. Supp. 2d 434, 436 (D. Mass. 2007); March VII Inv. LP v. Kramer, CA 15-11917-MLW, 2016 WL 4941985, at *4 (D. Mass. Sept. 14, 2016) ("presumption in favor of plaintiffs' choice of venue is relatively weak in this case because the March Entities now have 'no material connection with this district'"); 15 Arthur R. Miller et al. Federal Practice and Procedure, § 3848 (4th ed. 2017) (preference "given less weight if the plaintiff sued in a district that has no obvious connection to the case"). Likewise, "'the plaintiff's venue choice is to be given less weight if the plaintiff is a nonresident of the chosen forum.'" Group-A Autosports, Inc. v. Billman, 2014 WL 3500468, at *3 (quoting Ondis, 480 F. Supp. 2d at 436); 15 Arthur R. Miller et al. Federal Practice and Procedure, § 3848 (4th ed. 2017) ("[i]f the plaintiff is not a

6

resident of the forum, the plaintiff's forum choice may be entitled to relatively little deference").

Here, plaintiff is not a Massachusetts corporation. The misrepresentations in the White Paper form the gravamen of the complaint. (Docket Entry # 1, pp. 5-9). The majority of work preparing the White Paper took place in Columbus. From his office in Columbus, Furth took the steps to post the White Paper and the related material on the company's website. (Docket Entry # 34-2). Although the website reflects that the company "offers state-wide implementation of its specifications in 12 states including Massachusetts" (Docket Entry # 37-2), there is little indication that the White Paper caused an injury to IMS in Massachusetts. These and other circumstances reduce the weight afforded plaintiff's choice of a Massachusetts forum.

The Southern District of Ohio is a substantially more convenient forum to SIF. Furth resides and works in Columbus. With respect to IMS, a transfer to Ohio is relatively neutral inasmuch as it is already litigating the case in a distant forum from Orlando. Orlando is nevertheless closer to Columbus than to Boston. (Docket Entry # 34-1). Accordingly, this is not a case in which the "transfer would merely shift the inconvenience from one party to the other." Princess H., Inc. v. Lindsey, 136 F.R.D. 16, 18 (D. Mass. 1991). The convenience to IMS' counsel, who is located in Boston, is of little, if any, significance even

considering the potential, additional litigation costs to IMS. See Ondis, 480 F. Supp. 2d at 437; Princess H., Inc. v. Lindsey, 136 F.R.D. 16, 18 (D. Mass. 1991) ("[n]o case articulates that the convenience of counsel is a consideration in deciding a motion to transfer pursuant to § 1404(a)"); see also Bowen v. Elanes New Hampshire Holdings, LLC, 166 F. Supp. 3d 104, 107-08 (D. Mass. 2015) ("[p]rivate interest factors include . . . 'comparative trial costs'" and noting that "courts do not assess the convenience of counsel").

The location of witnesses is frequently mentioned as the most important factor in the analysis. Turnley v. Banc of Am. Inv. Services, Inc., 576 F. Supp. 2d 204, 217 (D. Mass. 2008) ("'convenience to the expected witnesses is "probably the most important factor, and the factor most frequently mentioned"'"); see Braintree Laboratories, Inc. v. Bedrock Logistics, LLC, CA 16-11936-IT, 2016 WL 7173755, at *3 (D. Mass. Dec. 8, 2016) ("convenience of witnesses is 'probably the most important factor' to be considered"); Gemini Investors Inc. v. Ameripark, Inc., 542 F. Supp. 2d 119, 126 (D. Mass. 2008) (collecting cases "that convenience of the witnesses is an extremely important, if not the most important, factor"). "In considering this factor, the court looks at the number of potential witnesses located in both the transferor and the transferee district, the nature and quality of their testimony, and whether the witnesses can be

compelled to testify." Boateng v. Gen. Dynamics Corp., 460 F. Supp. 2d 270, 275 (D. Mass. 2006) (internal quotation marks omitted). Of the 14 witnesses SIF identifies in its initial disclosure, one (Nadeau) resides in Massachusetts and another Alex Jackl ("Jackl") works in Warwick, Rhode Island. (Docket Entry # 34-1) (Docket Entry # 34-2, ¶ 11). Nadeau submitted comments to Furth during the preparation of the White Paper similar to comments made by other reviewers. He was not an active contributor to the White Paper. (Docket Entry # 34-2, ¶ 11). Jackl is a co-leader of SIF's North American Technical Board. SIF also listed George Gatsis ("Gatsis") as a potential witness in its initial disclosures. Gatsis works for a corporation in Illinois but conducts business in Massachusetts. (Docket Entry # 37-2, ¶ 4) (Docket Entry # 34-1). IMS also identifies Danielle Norton ("Norton"), SIF's program manager for the Massachusetts Department of Education, in its initial disclosures and intends to depose her. Furth attests that "Norton did not play any significant role in the preparation of" the White Paper. (Docket Entry # 34-2, ¶ 12).

In contrast, none of the five, overlapping witnesses listed in both IMS' and SIF's initial disclosures reside in Massachusetts, although this court assumes that one of the five, Jackl, is within the 100-mile subpoena power of this court. See Fed.R.Civ.P. 45(c)(1)(A). Of these five witnesses, Furth, a

9

critical witness, lives in Columbus.  Three of the remaining, four overlapping witnesses, including Abel, live closer to Ohio than to Massachusetts.  (Docket Entry ## 34-1, 34-2).  In fact, seven of the 19 witnesses identified by IMS and SIF in their initial disclosures reside or work in Ohio or the nearby states of Illinois, Iowa, and Minnesota.[2]  (Docket Entry ## 34-1, 34-2).  Overall, the convenience of the witnesses weighs in favor of the Ohio forum.

Technological advances undeniably reduce the importance of the location of documents as a factor in the section 1404(a) analysis.  See Rodríguez-Navarro v. Am. Airlines, Inc., 15-1900 (JAG), 2016 WL 4179884, at *3 (D.P.R. Aug. 4, 2016); Arroyo-Perez v. Demir Group Intern., 733 F. Supp. 2d 314, 321 (D.P.R. 2010); Boateng v. Gen. Dynamics Corp., 460 F. Supp. 2d at 276; 15 Arthur R. Miller et al. Federal Practice and Procedure, § 3853 (4th ed. 2017) ("[w]hile recognizing the impact of technology, courts generally conclude that the physical location of records and document is still relevant").  All of the documents relating to the White Paper are in the possession of SIF in Furth's office in Columbus.  (Docket Entry # 34-2).  No SIF "documents relating to the Whitepaper are located in Massachusetts."  (Docket Entry #

---

[2] Although IMS asserts in its opposition that Jim Goodell is located in Worcester, Massachusetts (Docket Entry # 37, p. 7), the initial disclosures list him as an analyst with a company in Fairfax, Virginia.

34-2).

The Southern District of Ohio has a greater connection to the issues than this forum. As the main location where Furth created and prepared the White Paper as well as posted it on SIF's website, the Southern District of Ohio forum is the primary location of the alleged misconduct which also involves an Ohio resident. See Group-A Autosports, Inc. v. Billman, 2014 WL 3500468, at *5 (insofar as "any state has an interest in adjudicating this case, it would be North Carolina since the alleged counterfeiting took place there, and the case involves a resident of that state"). Likewise, the states' interests favor Ohio, which has a greater interest than Massachusetts, in the litigation. See also Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 211 (1st Cir. 1994) ("Commonwealth's interest in the litigation sub judice is arguably lessened by the doubts surrounding whether defendant's act can be said to have been committed in the forum").

The federal law applied in this action does not weigh in favor of either party. See id. The remaining claims, however, arise under Massachusetts law. This factor therefore weighs against a transfer.

Finally, docket congestion "is a proper factor to evaluate." Johnson v. VCG Holding Corp., 767 F. Supp. 2d 208, 217 (D. Me. 2011); accord Research Automation, Inc. v. Schrader-Bridgeport

11

Intern., Inc., 626 F.3d 973, 978 (7th Cir. 2010); 15 Arthur R. Miller et al. Federal Practice and Procedure, § 3847 (4th ed. 2017). The 2016 statistics of the median time from filing to disposition of civil cases (Docket Entry # 34-1, Ex. C) favor a transfer whereas the more recent 2017 data indicates that the Southern District of Ohio has a longer median time than this district. See http://www.uscourts.gov/sites/default/files/data_tables/stfj_c5_630.2017.pdf. Hence, this factor weighs slightly against a transfer.

Weighing the various factors and mindful of plaintiff's choice of a Massachusetts forum, SIF met its burden of proof in seeking a transfer.

## CONCLUSION

In accordance with the foregoing discussion, the motion to transfer (Docket Entry # 33) is **ALLOWED** and this case is transferred to the United States District Court for the Southern District of Ohio.

                                        /s/ Marianne B. Bowler
                                        **MARIANNE B. BOWLER**
                                        United States Magistrate Judge